The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the Court is now sitting. God Save the United States and this Honorable Court. Be seated. I want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have four interesting cases, good lawyers, and we're looking forward to the arguments. In the first Yes, Your Honor. Thank you. Good morning. It's good to have you with us. It's good to be back. Thank you. Good morning, and may it please the Court. Jackie Tarleton for Brooks Lesane. Your Honors, everyone agrees that Brooks Lesane is actually innocent of his 2003 conviction for being a felon in possession of a firearm. Everyone agrees that no remedy other than quorum nobis is available to him to correct that error. And everyone agrees that this error, an illegal conviction based on actual and factual innocence, is of the most fundamental character. Although the government suggests otherwise... Why do you say that that is an error of the most fundamental character? That's so, Your Honor, because this is a conviction based on actual and factual innocence. Mr. Lesane has been followed by a conviction for an offense that he never committed, and I think we both agree about that. In an offense he never committed because you say there's no offense. That's right. Any longer. After Simmons, we know that the North Carolina convictions that served as the predicate for his felon in possession conviction are not in fact felonies as this Court determined in Simmons. Well, but it wasn't just Simmons. It was Miller. That's right. Miller is what made Simmons retroactive. You have two fans on this panel of Miller. I'm glad to hear it. You've got one author. I wrote it. That's right, and I think, Your Honor, there is another opinion that you've authored in Adams that I think is relevant here. There's some talk from the government about adverse consequences and whether Mr. Lesane has suffered sufficient adverse consequences to require this Court to grant quorum nobis. Well, is it true that if we give you the relief, the sentence is still going to be 156 months? And if that's true, what are the other collateral consequences? I think if Your Honor is referring to the 2019 conviction, another panel of this Court has already dismissed that case, so the appeal is not pending. His sentence would not change. But that was dismissed on an appeal waiver. That's correct. They didn't address the legal issues. They did not. Was he adversely impacted by this 2003 conviction in the sentencing in 2019? I believe so, Your Honor. And the reason I say that is because even though he was deemed to be a career offender and so his felony possession conviction did not affect the calculation of his guideline range, the offense was still scored three points. It still appeared in his pre-sentence report. It still was something that the Court was not only allowed to, but in fact bound to consider under 3553A. So I think, you know, this Court's decisions in Mandel, the Supreme Court's decisions... Is Mandel, you think, is your best case? I think Atkinsade is our best case. Which one? Atkinsade. I hope I'm pronouncing that correctly. I was on that, I think. I'm sorry? Was I on that? Was that Judge Traxler's case, wasn't it? I believe that Chief Judge Gregory... Judge Gregory. Judge Gregory. Maybe Judge Jack Traxler just said it. Yeah. In Atkinsade, the petitioner didn't file a quorum nobis petition... Let me back up a minute here. Yes. Talk about these four prongs. Yes. You're talking about these four prongs. When the Mandel case came down, those four prongs had not been identified. Mandel started the ball rolling. Isn't that right? Yes. But so Judge Widener, who authored the majority opinion in Mandel, didn't have to walk through the four-part test. Did he, in substance, cover the four-part test, do you think? I think so, and I think, you know, I've not seen a decision where this court has denied quorum nobis relief on the basis that there were no adverse consequences from an illegal conviction. I haven't found that case, and I think that's significant. Well, one of them was a disbarment, which is pretty serious for a lawyer. Sure. And what was the other one? There was one that dealt with the risk of deportation. Deportation, that's pretty serious, too. Is this situation for your felon measure up to that? I think this court and the Supreme Court's decisions in the concurrent sentence doctrine are informative here, because the question is, if we're not dealing with the initial sort of felony label or felon label, if this is a second felony conviction for someone, is it still sufficiently adverse to satisfy Article III? Article III is a pretty low bar in terms of having a case or controversy, and in Ball, the Supreme Court said there's adverse consequences even of a second felony conviction, because it can delay someone's parole eligibility, it can result in an increased sentence under a recidivist statute for a future... What's your... but those are speculative, aren't they? The Supreme Court didn't think so. All right. The Supreme Court thought... Have you done anything that's not speculative for your man? I think looking at the 2019 case is a perfect example. When you look at the pre-sentence report that was filed in that case... When was it he got that $200 assessment? He was... he paid a $100 special assessment for the 2003 conviction, if that's what you're referring to. So I believe that under Rutledge... I thought there was a $200 assessment or something like that. So he paid it? He did pay it for his 2003 conviction, and that's another adverse... So the government owes him $200? It owes him at least $100 for the 2003 conviction. And I think Rutledge is supportive of that proposition. But Judge Widener said... I'm talking about Mandel, and that's one that you all think is the best case for you. I believe that's what she argued. That's what was argued in the lower court anyway. But he's got some language in dealing with this third prong. He doesn't talk about the third prong. It's collateral consequences, or whatever it is. Being branded as criminal. I think that's a quote. As being enough. Is that dicta or an aside? Is that anything we can rely on? You're branded as a criminal. Does that satisfy prong three of this four-part test? Absolutely. And I think Ball and Rutledge make plain that it's not just that first felony conviction that carries such adverse consequences. It's any felony conviction. Even if someone remains a felon as Mr. Lesane would. So I think this court absolutely should correct this error. And we're only talking about the 2003 conviction. Right? That's what we're dealing with here. That's all we've challenged. Yes, sir. And it's the 2003 conviction. He didn't complain about it. And then you had the Simmons case in 2011. Then you had the Miller case that made Simmons retroactive in 2013. And he didn't do anything about it. So for several years. So the government claims it's out of time. And the district judge said it's out of time. He just waited too long. So we've been talking about these adverse consequences. But how do you get around? Those are the two big problems or the consequences and the timeliness. Right? Prejudice and timeliness. Those are the arguments the government is making. So how do you get past the timeliness? You wait forever on a quorum nobis? Well, I think it's important to recognize the standard for quorum nobis. There is no statute of limitations, unlike in 2255. And there's not even a requirement that someone file a quorum nobis petition at the earliest possible opportunity. They must simply give sound or valid reasons at the time that they do file their quorum nobis petition for not filing it sooner. Importantly, the government has pointed to no adverse consequences that it has suffered as a result of any delay in Mr. Lissain's filing. And in a situation like this, I don't know why this court wouldn't correct the error when it would simply correct the factual record of Mr. Lissain's criminal history for any future purposes for which it may be relevant. So the remedy you're seeking here today is to have this removed. Yes, sir. And it seems to me, because maybe I'm having a hard time, I'm seeing this a little differently, but wondering what's going on here. From your client's perspective, the government alleges, and it's probably true, he could have obtained this relief much earlier. Is that true? Could he have filed a quorum nobis petition earlier? Certainly. Could he have obtained a relief based upon the Simmons and Miller cases earlier? I believe after 2013 he could have, yes. So it would seem to me he would have benefited tremendously from 2013 to now to not have that on his record. So he's the one who suffered the detriment by not getting a benefit to which he is entitled to. So now you come later on, would that everybody would not take the benefit and just, you know, if you're entitled, for instance, it's like being entitled to be out of prison in a different type of case. He said, well, I'll just stay here in prison and seek the relief later on down the road or I just don't do it. And then you come and say, okay, I want relief from prison. Well, you spent time in. Well, here's an individual who's had something on his record, should never have been up there, should not have been up there, but it's been lingering up there for seven years. Now the complaint is, well, you can't have it now because you waited too long to ask for it because of our rules of timeliness. The court says, well, you've got to be timely. What's the harm? I'm trying to figure out what is the big deal. Why don't you just take it off the record? It's a great question, Your Honor. I mean, it's not a great question. It's a common sense question. We are not courts that have rules just for the sake of rules. I mean, we need rules to make things work. But here's an instance. It just doesn't make any sense. It seems like to me the most judicially economical thing to do, someone comes and says, I'm entitled to this. And you say, yeah, you absolutely were entitled to this back in 2013. You waited too long to ask for it. Now we're not going to take it off your record. It's going to be up there forever. Why wouldn't you just take it off the record? I'm really miffed at that. I mean, we can talk about all the effect of the cases and what Coram Novus does, and we can wax elegantly on that, which we do in cases when we're dealing with criminals and poor people. We do it all the time. But then we get other cases and all of a sudden the light opens up and we can give them relief because we make it look like it's just common sense. We should do this. So that's where I am. I just don't get it. I mean, it's an interesting case, but maybe the government, I know you hear me asking this, and I'm not asking it in jest. I'm really, it's a sensible thing. What is the big deal here? Why not just do it? One struggle being done, you wouldn't be standing in this court, we wouldn't be dealing with it off the record, and nobody's harmed. No government is harmed, nothing else is harmed. I think that's exactly right, Your Honor, and I would just add a very minor point. But what's all the other discussion about? I mean, we've been having this wonderful discussion about all these cases and what they mean. The end result is why do we waste our time on these kind of cases? They're far more important issues to deal with than something where an individual is entitled to a relief but you don't want to give it to him because it took too long to do what? To simply come into court because of the way we now fashion it procedurally? Just do it. And that's the end of it. Is there no procedure that allows for that? I think Atkinsade allows for that, Your Honor. I think that Atkinsade dealt with the fact that a petitioner had not filed a quorum novus petition for nearly nine years after his conviction, and the court in that opinion said that Mr. Atkinsade had, quote, no reason to challenge the conviction as his attorney's advice up to that point in time appeared accurate. And so the court did not impose a burden on a pro se petitioner to file a quorum novus at the earliest possible opportunity. It recognized the realities of the situation and said as soon as it was apparent that this was going to cause some adverse consequences or had been causing him adverse consequences, he filed it and the court should correct it. And I think in the analogous concurrent sentence doctrine context, Judge Floyd's opinion in United States v. Adams is instructive. He said, quote, just as the criminal justice system must see the guilty convicted and sentenced to a just punishment, so too it must ferret out and vacate improper convictions. I think it's one of the most sacred duties of this court and certainly of our office that whenever we see an injustice like this one, we bring it to the court's attention, we bring it to the government's attention and do our very best to correct it, even if we can't necessarily undo all of the harms that have already occurred to our clients. I'd be happy to answer any of this court's questions. Well, how much time can you wait before you file a habeas corpus petition? Forever? I think, Your Honor, the requirement in this court is valid. I mean, if you say this one should, he didn't know it was retroactive or wasn't on constructive notice it was retroactive until 2013 when the Miller case came down. He still didn't file for, what, six years for relief. How long could he wait? Could he wait 10 years, 20 years? I think it's a fact-based analysis. 30 years? I think if there were a circumstance where somehow there were allegations. I'll give you all a case. Excuse me. I'll give you all a case nobody's seen for years called U.S. v. Richard Nell, N-E-L-L. It was decided here in 1971. The appeal was decided in 1971. But it was a quorum nobis case. And the hearing occurred in 1970, and the judge granted a writ of quorum nobis to vacate a conviction of man act violation in 1932. No relief had been sought for 38 years. In the case, though, the appeal deals with misrepresentations made by Nell's lawyer and suspension of a lawyer and contempt of a lawyer for lying to the judge. And the judge, because of the misconduct of the lawyers, actually set aside his initial writ of quorum nobis, but he granted it after 38 years. And that was in 1970. And I know something about it because I argued it. And I was the lawyer at the hearing in 1970 for the United States. Nobody cites it anymore. But it was a quorum nobis case. It wasn't anything anybody taught me in law school or anything, but I learned it by fire, I guess it was. But it was 38 years later. And I'll just throw that out there to you. I would note also in the Ninth Circuit, Hirabayashi emerged from the same circumstance. That was 40 years. That's right. It was 40 years, and it was the same. From the Japanese internment camps in World War II. And they came back 40 years later in the Ninth Circuit. Gave them relief. Well, somebody was able to, the Ninth Circuit was off the deep end maybe or something. But it was after they'd been to the Supreme Court. They was following up. He was one of the litigants in the Supreme Court. They set the record right. Well, I've been taking some of your extra time probably. Let's see what the government's position is going to be on this. Ms. Golden. Thank you very much, Ms. Tarleton. Thank you. Good morning. May it please the Court. Lauren Golden on behalf of the United States. This Court should affirm the District Court's order for two reasons. First, the District Court did not abuse its discretion when it determined that the defendant failed to provide a valid reason for not attacking his conviction earlier. Second, and in the alternative, it is clear from the record that the defendant has not established adverse consequences that are sufficient to satisfy Article III's case or controversy requirement. Now, you concede prongs one and four? Yes, Your Honor. The government concedes. I say you. You're speaking for the United States of America. Yes, the government. The government concedes prongs one and four of the four-part test. You contest prongs two and three. Yes, Your Honor. Timeliness and prejudice. Yes, Your Honor. And the District Court relied on timeliness. Yes, Your Honor. That was what you said then. And you all claimed that he should have filed for relief immediately, I guess it was, upon the rendering of the Simmons opinion. Do you abandon that position yet? No, Your Honor. But Simmons wasn't retroactive on its own motion. No, Your Honor. It was not retroactive until Miller, but I did learn in preparing for this argument that the Eastern District of North Carolina entered a standing order in October of 2011 that appointed the Federal Public Defender's Office to represent all of its clients that were currently incarcerated that may have a claim related to Simmons. And so at least in October 2011, the defendant could have potentially brought some type of post-mortem. So you say this order that the court issued that they had to bring Simmons relief is what applies to Mr. LeShane that he then should have filed because the local court issued some kind of an order on Simmons? It appointed counsel for those defendants. Appointed counsel. To help them assess whether they may have some type of post-conviction claim in light of United States v. Simmons. And there were cases where the United States consented or agreed to a Cornovus conviction. But you agree this fellow doesn't have an offense. That's what, right? You agree he's not, there's no valid offense. There's no valid conviction. Based on Simmons, there's no valid 18 U.S.C. 922C conviction. Yes, Your Honor. The 2003 conviction is not an offense against the United States of America. Do you agree with that? Yes, Your Honor. And that's what he's challenging, the 2003 conviction. Yes, Your Honor. So the government agrees. I'm going back to what Judge Wynn was talking to you all about. The government agrees the 2003 conviction is invalid. There's no offense. Yes, Your Honor. If that was the only thing he had on his record, he'd be as pure as a newborn baby. He had prior state, he had two prior states. No, the if, but we're only talking about the 2003 conviction. That's all he's challenging here. Yes, that's all he's challenging. Okay. So you're trying to show us he's a no-count person. Is that relevant under any of these four problems? And which one? I'm sorry, I don't think I understand the question. Well, you're talking about his other record. His other criminal convictions don't have anything, or record, that have anything to do with this. He's challenged in 2003, based on Simmons in 2011, and Miller in 2013. Yes. Period. Yes. Okay. We're in the law, we're in the jurisprudence of Coronobus. Is there any requirement or discussion about timeliness? Your Honor, that comes from United States v. Morgan, where the court said that the defendant must show that there are sound reasons for not seeking earlier relief. And while that does not put a specific time period on when the Coronobus petition must be brought, the defendant must at least provide some type of reason to the court to explain why the defendant did not seek relief earlier. And here, looking at what the defendant argued to the district court, there is absolutely no mention as to why the defendant waited until 2020 to bring this claim. It is only on appeal that the defendant has now argued that the Federal Public Defender's Office did not have an opportunity to review his record and to assist him in bringing a Simmons claim. Well, that sounds like you're ineffective counsel, that you're blaming it on the public defender. Your Honor, I'm not blaming the Public Defender's Office. I want to point out that it was not until the appeal that you... So the obligation was the public defenders and not the United States of America. You're the one that convicted him. Yes, but it is the defendant's burden under Coronobus to prove the four prerequisites in that the petition should issue and that the conviction should be vacated. And the defendant in this case offered no reasons to the district court. But go back to Judge King's. That's interesting. He said you're the one that convicted him. The government convicts someone of something. It turns out what the government convicted him of is not a crime. Why is it that the defendant now has to come back and say, you did something to me you shouldn't have done? In just about every other instance in our society, when you do something wrong to someone, you go and tell them. We require that in civil cases. If you've got a car that's got a problem, you don't let the manufacturers say, okay, when they find out you need to come make a claim on the brakes, that sort of stuff. They make them send out notices. But here, from your perspective, once, as you said, the Eastern District took, I guess, an affirmative step of calling up the public defender. I suppose on collateral review, there's not a whole lot of right to counsel that exists. So I don't know who's got a counsel who's out there with a conviction on their record, even now. And yet, in the criminal context, individuals are walking around right now, just like this one, where the government convicted them of something they shouldn't have convicted them of. And yet, we have yet to put the burden on the government because they know it. You know who you've convicted. You should know. If you send someone to jail, you should know who you convicted. You should know that it's a detriment to that person to put a conviction on their record. And yet, you can do nothing. And therefore, the detriment of having that conviction continues to ride with them. And in this instance, as I said, and I'm just going back. I think you know where I'm going with that on it. What is the – I just don't get it. It just seems to me he's entitled to it. Everybody says he's entitled to it. The easiest thing any court can do is says, well, everybody says you're entitled. You got it. Why are we going to sit here and call out every Latin term we can to show how much Corum Novus law we know and use every element when the simplest thing to do is the courts have much more important and much more involved issues to deal with than this question here. How does that work? In other words, let me ask you this. Do you maintain there is no way in which this court can effectuate a relief to the defendant in this case?  Based on the specific facts of this case and it is the government's position that the court did not abuse its discretion. So we're talking about an abuse of discretion. I'm asking, did he have the discretion to do it? Yes. Why wouldn't he? That's the question. He knows the government hasn't contacted this person. He knows it doesn't have a lawyer. He knows he has it on his record. Why wouldn't he exercise what sounds like to me reasonable discretion and says, okay, take it off the record. Because the Supreme Court in Morgan stated that the defendant must demonstrate sound reasons for not seeking earlier. He didn't know about it. You're saying it's his fault because he didn't know about it. And he had a lawyer, the federal public defender, and they didn't know about it. And the United States government had lawyers and they didn't know about it specifically apparently. Nobody knew about it. And so time ran and he didn't get any relief. Let me ask you this. When the Miller case came down, was he still on pre-trial or post-conviction relief of some kind? Was he under some kind of supervision? Yes, Your Honor. When did that end? I believe it ended. I don't want to believe. I want to get it right because it's not in this record. It's not in the record. I'm asking you this because I need to supplement the record on this. We need to know for sure. He was convicted while in prison of misdemeanor federal charges. And he was indicted. He pled guilty to those. He had counsel. He pled guilty in January 2012 in the Western District of Virginia and received, I believe, another 12-month sentence. And then he was released on supervision in, I believe it was November of 2013, two or three months after the Miller decision came out. So you don't know if you're telling me two or three months. We know when Miller came down. And the question is, was it before or after Miller? You say it was after, but you don't know. It was after. It was November 2013. We know that from the pre-sentence report that we've seen. And I'm happy to file a motion to put that under seal to have that in the record. But we know when he was released based on the information in his pre-sentence report. So it's not in the record or it is in the record of this case? Of this case. Well, you're relying on it. So you can't rely on it unless it's in the record, can you? We rely on. I'm just asking you if you know. Pardon? We ask the court to take judicial notice of the filings in the Western District of Virginia, which have the sentence and his supervision. Have you submitted anything to us in that regard about that date? And why would it have anything to do with the Coram Novus thing? You've said something about it, but we don't have anything definite in the record. Well, just that he was on supervision when Miller was deemed retroactive. But the defendant has never actually said that he did not know about Simmons or that he did not know about Miller. He has said nothing. Well, he is his lawyer. He's speaking through his lawyer. But his lawyer did not make that argument to the district court. There was nothing in the defendant's pleadings as to why he waited. There was nothing about whether he had these discussions with counsel. We don't know because there is no reason. Have you asked his lawyer what he knew? You could talk to his lawyer and you'll find out and you know what the facts are. And then the government could exercise its discretion to agree this fellow is not, he doesn't have a valid conviction from 2003. He doesn't have one. And the government can consent to Coram Novus. And the government does. The government does in what they call the interest of justice. It's written across the top of the Department of Justice. In Marble up there, wherever it is in D.C. Right? Equal justice under law. So the government wins, we used to argue, when justice is done. So it always wins as long as justice is done. Yes. This particular defendant has a lengthy criminal history. And this really gets to the adverse consequences. It's the government's position that this conviction had no effect on his most recent sentence. It is also eventually not going to be scored because of the length of time. She says it was scored in that last sentence when he, with his lawyer, agreed to waive the appeal. We didn't hear it because the government came in and pled the appeal waiver. After his, it was on constructive notice that his 2003 conviction was invalid. And the government got him to agree to appeal waiver. And get extra time. I don't, I can't speak to if the government knew about that it was an invalid. Well you knew by constructive notice, just like you're charging him with, with the Miller case. And the Simmons case. You're saying he should have known. Well if he should have known, you should have known. With respect to the guideline range, it was the government's position that he is a career offender. And he is a level six regardless of this conviction. And then also the court could. What about that $200 or $100 assessment they charged him? And the government still got in. The defendant. Isn't that a collateral consequence? She says he paid it. His lawyer here says he paid it. Yes. For a conviction that's not a conviction. Potentially. The defendant did not raise that as a collateral consequence. Well I'm raising it. I'm raising it right now. Isn't that a collateral consequence? He's paid $100 for an offense he didn't commit. It's not an offense. So you, the United States of America, owe him $100 plus interest from 2003. Would that be fair? Yes, I believe the Supreme Court has said that. So you'd say that's fair. So that's a collateral consequence. And Judge Widener says in the Mandel case that there were consequences because they were, and Mandel was more than one petitioner, that they were branded as criminals. These were lawyers and former Governor Amaro. They'd been branded as criminals and the Supreme Court changed the law on the mail fraud statute. And so they gave him a writ of coram nobis in 1988 here in this court. Why wouldn't that same principle, branded as criminals, apply in this situation? Is that distinguishable because of what? Because of his criminal history. Criminal history. Well, actually, and in Judge Hall's dissent in the Mandel case, he said these guys, they are out on a technicality because they changed that mail fraud statute. They were, what they did is still criminal, is what he argued in the Mandel case. What they did was still violations of federal law, but they were not under the mail fraud statute. Other statutes. And which would be different from this case because this offense is not an offense. It's not an offense any way you turn it. Under federal law, the one he was convicted of in 2003. But he has other state felony convictions. He does, but I'm talking about the facts of the case. Yes, Your Honor. The facts of the case in Mandel, they were still, the facts made him still criminals, according to Judge Hall in the dissent. And he opposed giving him a writ. And in your case, 2003 is what we're arguing about. A 2003 conviction. That's all we got here is a 2003 conviction. That's not an offense and you admit it. The United States of America admits that. You argue, but he waited too long. And he wasn't prejudiced. And as representative of the government, you're entitled to argue that. But you can't tell us that he's just simply a no count, I don't think. And get away with it. Your Honor, I did want to add with respect to this third prerequisite and the adverse consequences. Every defendant who brings a writ of Coronavis to seek to have their conviction vacated necessarily has a conviction on their record. And so the adverse consequences. But they got a conviction that's defective on their record. If it's Coronavis, which is really Coronavis, which is very rare. This is rare. Most lawyers, I don't know how many of you have had, this might be the first, but I suspect this might be the first for the public defender. And sometimes it's the first for a lot of lawyers and judges. Doesn't happen. Do we know, as to his criminal history, did he have any other felonies? Were they all misdemeanors? Prior to his 2003, he had two prior state felonies. It was larceny of the person and possession of cocaine. And then with respect to the 2003 conviction, he admitted that he was on his way to rob someone and that he had been involved in three other robberies, which is information that the district court in his most recent criminal case considered at the Senate. And then he's had two other felony convictions since the 2003 conviction, assault by strangulation and, I believe, another possession of cocaine in state court. And then he had his federal convictions for the misdemeanor crimes while he was in prison. And then now his two most recent convictions for possession and carrying a firearm. Well, hypothetically, if, for example, he didn't have any convictions except for misdemeanors and then he caught this felony conviction, wouldn't that be adverse to him based on how we view felonies? Potentially, a felony, if that was his first felony conviction, that could carry certain civil rights violations or certain, not violations, but certain changes to his civil rights and liberties. But that's not the case here. This defendant did have two prior state felonies before he pled guilty to the 2003 felon in possession. I see that my time is almost up, so if I may just briefly conclude. Go right ahead. The government would ask that this court affirm the district court's decision because the district court did not abuse its discretion. Thank you, Your Honor. Thank you. Thank you. Ms. Tarleton? Thank you, Your Honor. I'd be happy to answer the court's questions. I just wanted to respond very briefly to my friend on the other side's suggestion of waiver. The government never mentioned the word waiver in its brief, and this court has held time and again that the government can, in fact, waive any waiver argument. That's in the United States against Cawthorn, 726 F3rd 503 509 Note 5 from 2013. And with respect to adverse consequences, I would note that the government has cited no case in its brief that would suggest that this court has ever denied quorum nobis for failure to show adverse consequences, certainly not in the circumstances we have here of actual factual innocence. I'd be happy to rest on my argument in briefing unless the court has any further questions. That's fine. Thank you very much for your help. We appreciate it. And we'll take the matter under advisement, and Madam Clerk, we call the next case.
judges: Robert B. King, James Andrew Wynn, Henry F. Floyd